UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BOYKINS and LASHAE BRAXTON,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, AMIR ADIEH, MICHAEL MARTINEZ, and UNKNOWN SAN DIEGO POLICE DEPARTMENT OFFICERS,<br><br>Defendants. | Case No.: 21-cv-01812-AJB-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION TO DISMISS; and**<br><br>**(2) DENYING DEFENDANTS' MOTION TO STRIKE**<br><br>**(Doc. No. 18)** |

Presently before the Court is Defendants the City of San Diego ("the City"), Amir Adieh, Michael Martinez, and Unknown San Diego Police Department ("SDPD") Officers' (collectively, "Defendants") motion to dismiss Plaintiffs William Boykins and Lashae Braxton's (collectively, "Plaintiffs") First Amended Complaint ("FAC"). (Doc. No. 13.) Defendants move to dismiss the following claims from the FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure: (1) Plaintiff Boykins's first claim of excessive force against Defendant Adieh; (2) Plaintiff Braxton's first claim of excessive force against Defendant Martinez; (3) Plaintiffs' second claim for violation of the Equal Protection

Clause against Defendants Adieh and Martinez; (4) Plaintiffs' third claim of municipal liability against the City pursuant to the Supreme Court's holding in *Monell v. Department of Social Services*, 436 U.S. 658, 701 (1978); and (5) Plaintiffs' first (excessive force) and second (violation of the Equal Protection Clause) claims against Unknown SDPD Officers. (*Id.*) Plaintiffs filed an opposition, to which Defendants replied. (Doc. Nos. 15, 16.) Pursuant to Federal Rules of Evidence Rule 201, Defendants additionally filed a request for judicial notice in support of their motion to dismiss Plaintiffs' FAC. (Doc. No. 13-2.) For the reasons stated herein, the Court **GRANTS** Defendants' motion to dismiss.

Defendants also move to strike several paragraphs of Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(f). (Doc. No. 13.) For the reasons stated herein, the Court **DENIES** Defendants' motion to strike.

## I. BACKGROUND[1]

### A. Factual Background

On March 31, 2020, Plaintiffs William Boykins and Lashae Braxton were driving home when they were passed, in the opposite direction, by SDPD officers Amir Adieh and Michael Martinez. (FAC, Doc. No. 12, ¶ 1.) Defendants Adieh and Martinez made a U-turn and followed Plaintiffs to the parking lot of their apartment which was one block away. (*Id.* ¶ 20.)

As Plaintiffs were exiting the vehicle, Adieh and Martinez activated their sirens and initiated a seizure of Plaintiffs. (*Id.* ¶ 3.) Boykins turned toward Adieh and Martinez to ask why they were being stopped. (*Id.* ¶ 22.) Martinez responded by drawing his taser and pointing it toward Boykins. (*Id.*) Braxton stepped in between the taser and Boykins, her husband. (*Id.*) Adieh ordered Braxton to step back. (*Id.* ¶ 23.) When Braxton did not comply, Adieh grabbed her "and slammed her against the car and then forced her onto the ground." (*Id.*) While Braxton was on the ground with her legs extended in front of her,

---

[1] The following allegations are taken from Plaintiffs' FAC and are construed as true for the limited purpose of ruling on this motion. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

Adieh used his knee and bodyweight to press down on Braxton's upper back and neck. (*Id.*) As a result of this, Braxton, a two-time cancer survivor, sustained injuries to her neck, shoulder, back, hip, and knee. (*Id.* ¶¶ 5, 24.)

Adieh and Martinez handcuffed Plaintiffs and placed them in separate police vehicles. (*Id.* ¶ 25.) Boykins was cited for driving with an expired license, a brake light violation, and resisting/obstructing/delaying an officer. (*Id.* ¶ 27.) Braxton was cited for resisting/obstructing/delaying an officer. (*Id.*) Adieh and Martinez had Plaintiffs' car towed and they were released. (*Id.* ¶ 7.)

Adieh and Martinez claim they stopped Plaintiffs because their third brake light was out. (*Id.* ¶ 28.) Plaintiffs allege that Adieh and Martinez's proffered reason for stopping them was pretextual, and that their real reason was because of their race. (*Id.*)

Boykins alleges he "suffered non-economic damages, including mental suffering, loss of enjoyment of life, inconvenience, grief, anxiety, humiliation, and emotional distress." (*Id.* ¶ 30.) Braxton alleges she "suffered non-economic damages, including physical pain, mental suffering, loss of enjoyment of life, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress." (*Id.*) Braxton further alleges she "suffered economic damages, including medical bills." (*Id.*) Plaintiffs both allege they suffered additional "economic damages, including towing and legal fees." (*Id.*)

**B.     Procedural Background**

On October 25, 2021, Plaintiffs commenced this 42 U.S.C. § 1983 action against Defendants. (Doc. No. 1.) On February 22, 2022, Plaintiffs filed the FAC. (Doc. No. 12.) On March 8, 2022, Defendants filed the present motion to dismiss Plaintiffs' FAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 13.) Concurrent with the motion to dismiss, Defendants filed a motion to strike several paragraphs of Plaintiffs' FAC and filed a request for judicial notice in support of their motion to dismiss. (Doc. Nos. 13-1, 13-2.) Plaintiffs filed an opposition, to which Defendants replied. (Doc. Nos. 15, 16.) This order follows.

///

## II. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for '(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim.'" *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

### B. Motion to Strike

Rule 12(f) states a "court may strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) motions are generally "regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). "However, where the motion may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken." *Cal. ex rel. State Lands Comm'n v. U.S.*, 512 F. Supp. 36, 38 (N.D. Cal. 1981). After all, the policy underlying Rule 12(f) "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein v. A.H. Robbins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). The decision to grant a motion to strike ultimately lies within the discretion of the district court. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993).

### III.   DISCUSSION

#### A.   Defendants' Request for Judicial Notice

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, courts are typically limited to the four corners of the pleadings. *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 (1991). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

However, a court may consider documents incorporated by reference in the complaint or may take judicial notice of facts outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). For example, "on a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment." *Mack*, 798 F.2d at 1282.

Under Federal Rule of Evidence 201, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's

territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendants request the Court to take judicial notice of Exhibit 1: City of San Diego Public Records Act Request #21-2046, dated April 21, 2021. (Doc. No. 13-2 at 1–2.) Plaintiffs do not oppose this request or dispute the authenticity of these documents.

Courts routinely grant judicial notice of public records. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record"). Accordingly, the Court **GRANTS** Defendants' request for judicial notice of Exhibit 1.

**B.     Motion to Dismiss**

**1.     Plaintiff Boykins's Claim for Excessive Force Against Defendant Adieh**

Defendants first move to dismiss Boykins's excessive force claim against Adieh on the grounds that Boykins failed to allege any force used against him by Adieh. (Doc. No. 13-1 at 7.) While the FAC does not allege any contact between Boykins and Adieh, it appears Plaintiffs allege that Adieh is liable to Boykins for failing to intercede when Martinez pointed the taser at Boykins. (FAC ¶ 53.)

It is true "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *U.S. v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996). However, officers can only be held liable for failure to intercede "if they had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000) (finding officers could not be found liable for failing to intercede because they had no "realistic opportunity" to intercede during a quick sequence of events that led to a shootout).

Absent from the FAC are any facts to suggest Adieh could have intervened when Martinez pointed his taser at Boykins. The FAC merely makes a conclusory allegation by stating "[n]one of the other Defendants present intervened in this excessive use of force, despite their ability and opportunity to do so safely." (FAC ¶ 53.) To the contrary, the FAC

alleges that "Martinez quickly pulled a taser on Mr. Boykins." (*Id.* ¶ 4.) These allegations fail to establish that Adieh had a "realistic opportunity" to intercede while Martinez was allegedly using excessive force. *Cunningham*, 229 F.3d at 1289–90.

Therefore, the Court **GRANTS** Defendants' motion to dismiss Plaintiff Boykins's claim for excessive force against Defendant Adieh **WITH LEAVE TO AMEND**.

### 2. Plaintiff Braxton's Claim for Excessive Force Against Defendant Martinez

Defendants next move to dismiss Braxton's excessive force claim against Martinez on the grounds that Braxton failed to allege any force used against her by Martinez. (Doc. No. 13-1 at 8.) While the FAC does not allege any contact between Braxton and Martinez, it appears Plaintiffs allege Martinez is liable to Braxton for failing to intercede when Adieh "slamm[ed] her against a vehicle, taking her down to the ground[.]" (FAC ¶ 54.)

As stated previously, officers can only be found liable for failure to intercede if they had a "realistic opportunity" to intercede. *Cunningham*, 229 F.3d at 1289–90.

Like the above analysis, the FAC fails to establish any facts to suggest Martinez had a realistic opportunity to intervene. The FAC merely states that "[n]one of the other Defendants present intervened in this excessive use of force, despite their ability and opportunity to do so safely." (FAC ¶ 54.) Conversely, the FAC alleges that Martinez was pointing a taser at Boykins "for a significant period of time" while Adieh was allegedly using excessive force on Braxton. (*Id.* ¶¶ 53–54.)

As such, the Court **GRANTS WITH LEAVE TO AMEND** Defendants' motion to dismiss Plaintiff Braxton's claim for excessive force against Defendant Martinez for failing to provide factual support showing Martinez had a realistic opportunity to intervene.

### 3. Plaintiffs' Second Claim Alleging an Equal Protection Violation

Defendants move to dismiss Plaintiffs' second claim for an Equal Protection Clause violation on the grounds that Plaintiffs fail to plead facts supporting their allegation that Defendants were motivated by anything other than probable cause for the stop. (Doc. No. 13-1 at 11.)

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Essentially, it is "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Pyler v. Doe*, 457 U.S. 202, 216 (1982)). To properly plead a violation of the Equal Protection Clause under § 1983, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). A plaintiff can satisfy this by alleging the following four elements: "(1) that the plaintiff was treated differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) that the defendant acted with discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification." *Heard v. Cnty. of San Bernardino*, No. 20-cv-02335, 2021 WL 5083336, at *4 (C.D. Cal. Oct. 12, 2021) (quoting *Lam v. City & Cnty. of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012)).

In their FAC, Plaintiffs fail to provide any evidence they were "treated differently from others similarly situated." *See id.* Plaintiffs allege in their FAC that "Defendants, in particular, seized, detained, arrested, used force on Plaintiffs with a discriminatory motive and intent, based on Plaintiffs' race . . . ." (FAC ¶ 57.) However, Plaintiffs fail to elaborate or provide factual support illustrating Defendants' discriminatory motive based on Plaintiffs' race. Mere conclusory allegations restating the elements of a claim are insufficient to satisfy the modern pleading standard after *Twombly* and *Iqbal*, and "are not entitled to the presumption of truth." *Iqbal*, 556 U.S. at 681.

Additionally, Plaintiffs allege that "[t]he physical injuries, emotional distress, humiliation, and disruption to their lives that Plaintiffs have suffered" is "the result of a longstanding . . . pattern and practice of racially motivated policing by SDPD officers." (FAC ¶ 8.) In support of this statement, Plaintiffs provide reference to several studies and statistics. (*Id.* ¶¶ 31–50.) The referenced studies and statistics are disturbing to be sure, but

they do not speak to the individual motives and intent of Defendants Adieh and Martinez. Plaintiffs go on to allege that "[a]s a direct and proximate result of Defendants' acts and/or failures to act, Plaintiffs sustained injuries and damages . . . ." (*Id.* ¶ 59.) As stated previously, mere recitation of a claim's elements, without providing a sound factual basis, will not satisfy the modern pleading standard. *Iqbal*, 556 U.S. at 681.

Accordingly, the Court finds that Plaintiffs have not sufficiently pled an Equal Protection violation. For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' second claim **WITH LEAVE TO AMEND**.

### 4. Municipal Liability—*Monell* Claim

The FAC next asserts the City is liable to Plaintiffs, pursuant to *Monell*, for depriving them of their Fourth and Fourteenth Amendment rights. (FAC ¶ 64.) Defendants move to dismiss Plaintiffs' *Monell* claim on the ground that "Plaintiffs failed to allege a viable constitutional violation." (Doc. No. 13-1 at 7.) Plaintiffs assert they have properly asserted a *Monell* claim. (Doc. No. 15 at 14.)

"Section 1983 provides a cause of action against any 'person' who, under color of law, deprives any other person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 983 (9th Cir. 2002) (citing *Monell*, 436 U.S. at 694). "The term 'person' includes municipalities." *Id.* While a municipality cannot be held liable under § 1983 on a respondeat superior theory, it can be held liable when its policy or custom causes an employee to violate another's constitutional right. *Monell*, 436 U.S. at 690–92. For a municipality to be found liable, it must be demonstrated that the "municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) (citing *id.* at 694).

In order to establish a *Monell* claim, the plaintiff must prove the following elements: "(1) plaintiff was deprived of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation." *Koistra v. Cnty. of*

*San Diego*, No. 16cv2539-GPC (AGS), 2017 WL 6344819, at *3 (S.D. Cal. Dec. 12, 2017) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).

"[A] policy is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). A custom, for the purpose of liability under § 1983, "is a 'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law.'" *Koistra*, 2017 WL 6344819, at *3 (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

Following *Twombly* and *Iqbal*, *Monell* claims will survive a Rule 12(b)(6) motion if they: "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur." *Koistra*, 2017 WL 6344819, at *4 (quoting *Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010)).

In their FAC, Plaintiffs attempt to establish municipal liability by proceeding under two "prongs" based on the holding in *Monell* "and its progeny." (FAC ¶ 64.) First, Plaintiffs assert the City is liable because the constitutional violations were a result of "a settled practice or custom among the entity's employees . . . ." (*Id.*) Second, Plaintiffs assert the City is liable because the constitutional violations arose from the City's "deliberate indifference to the hiring, training, supervision, and disciplinary needs of law-enforcement officers." (*Id.*)

     **a. Settled Practice or Custom**

In support of their *Monell* claim under a "settled practice or custom" theory, Plaintiffs allege the City "has, for years, allowed a custom and practice of racialby [sic] [bias] [by] SDPD law-enforcement personnel, resulting in the routine violation of Fourth

and Fourteenth Amendment rights of BIPOC people in San Diego." (*Id.* ¶ 65.) Plaintiffs also allege that SDPD officers use race "as the sole justification to detain/arrest and search BIPOC people in San Diego[,]" and "Plaintiffs' injuries and damages were a foreseeable result of this practice and custom." (*Id.*) In reply, Defendants contend "Plaintiffs fail[ed] to allege a factual basis" to support their *Monell* claim. (Doc. No. 13-1 at 8.) The Court agrees.

In their FAC, Plaintiffs provide several studies and instances of alleged racial bias by the SDPD. (FAC at 6–10.) The examples explain that, historically, the SDPD is more likely to stop people of color than they are to stop white people. (*Id.* ¶ 35.) Additionally, the FAC alleges the SDPD is more likely to use force against people of color than they are white people. (*Id.* ¶ 39.) While the FAC alleges harrowing facts indicating the SDPD has a negative bias toward people of color, the FAC fails to assert that any of the allegations resulted in constitutional violations. Without establishing that the prior incidents were constitutional violations, the Court cannot identify a policy/custom sufficient to hold the municipality liable for the actions of two SDPD officers.

Additionally, Plaintiffs fail to explain how the policy or custom caused Plaintiffs' harm. Plaintiffs merely make a conclusory allegation that "Plaintiffs' injuries and damages were a foreseeable result of this practice and custom." (*Id.* ¶ 65.)

For the foregoing reasons, Plaintiffs have failed to sufficiently plead their *Monell* claim based on a theory of "settled practice or custom." All conclusory allegations must be backed by factual support and Plaintiffs must be able to establish a claim with a plausible entitlement to relief. *See Twombly*, 550 U.S. at 544 (holding that the pleading must contain enough facts to state a claim to relief that is plausible on its face).

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' *Monell* claim based on a settled practice or custom theory **WITH LEAVE TO AMEND**.

### b. Deliberate Indifference to Hiring, Training, Supervision, and Disciplinary Needs of Law-Enforcement Officers

In support of their *Monell* claim under a "deliberate indifference" theory, Plaintiffs

allege the City is liable because it "has objectively demonstrated its deliberate indifference to the hiring, training, supervision, and disciplinary needs of its law-enforcement officers with regard to the race-based policing problems set forth herein." (FAC ¶ 66.) Plaintiffs also allege the City has been aware that the SDPD "used race to target BIPOC people in San Diego for detentions/arrests and searches as well as used race in deciding to quickly use substantial and unreasonable force." (*Id.* ¶ 67.) Plaintiffs assert that while the City was aware of the racial bias by the SDPD, "the City has failed to take concrete actions to root out racist policing in the City of San Diego." (*Id.*) Defendants contend the FAC fails to allege "facts that the Defendant Officers had any race-based propensities, that the City knowingly hired them, failed to supervise them, or failed to discipline them . . . ." (Doc. No. 13-1 at 10.)

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410 (internal quotations omitted). For example, if "the need for more or different training is so obvious, and the inadequacy [is] so likely to result in the violation of constitutional rights, . . . the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

A plaintiff can display deliberate indifference in two ways. *Hyun Ju Park v. City and Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020). First, if a policy is "so facially deficient that any reasonable policymaker would recognize the need to take action[,]" a plaintiff can point directly to the "policy itself to establish that the municipality's policymakers were on notice that the plaintiff's federally protected rights would likely be violated if they failed to act." *Id.* at 1141–42 (citing *Brown*, 520 U.S. at 409). Second, "if the policy is not obviously, facially deficient, a plaintiff must ordinarily point to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Id.* at 1142 (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

The Court first addresses whether Plaintiffs, in their FAC, have set forth a specific

municipal policy "so facially deficient that any reasonable policymaker would recognize the need to take action." *Id.* In their FAC, Plaintiffs allege "The City has . . . been aware of publicly available data showing its law enforcement officers have . . . used race to target BIPOC people in San Diego . . . ." (FAC ¶ 67.) However, Plaintiffs have not provided the Court with a specific municipal policy "so facially deficient" to put the municipality on notice. *Park*, 952 F.3d at 1141. Thus, according to the first test set forth in *Park*, Plaintiffs have not displayed deliberate indifference. *Id.* at 1141–42.

Next, the Court addresses whether Plaintiffs have "point[ed] to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Id.* Although the FAC includes several studies and examples of the SDPD exhibiting a negative racial bias towards people of color, the FAC fails to allege that any of these instances led to constitutional violations. For example, the FAC alleges San Diego police are more likely to search, conduct field interviews, stop, arrest, and use force in situations involving people of color. (FAC at 6–8.) Plaintiffs also include three examples of the SDPD using alleged excessive force on specific individuals. (*Id.* ¶ 47.) As tragic as the examples provided are, Plaintiffs offer no facts to indicate the situations led to a deprivation of constitutional rights sufficient to put the municipality and its policymakers on notice.

Additionally, Plaintiffs allege the City has received "numerous resulting complaints by those who are victime [sic] of race-based policing . . . ." (*Id.* ¶ 67.) Plaintiffs further assert that "only 6.7% of racial profiling complaints" are sustained. (*Id.* ¶ 44.) However, the FAC does not allege or provide a factual basis to support that the complaints are wrongly dismissed. Without evidence that the complaints are dismissed unjustly, the Court agrees with Defendants' assertion that "it is just as likely SDPD rightfully sustained only 6.7% of the complaints." (Doc. No. 13-1 at 10.)

Thus, because Plaintiffs failed to allege a "pattern of prior, similar violation of federally protected rights," the Court finds they have not displayed "deliberate indifference" according to the second test set forth in *Park*.

1    Independent of the above analysis, Plaintiffs do not establish factually that there is a pattern of hiring that leads to a deliberate indifference by the City. Plaintiffs merely make a conclusory allegation that the City "has objectively demonstrated its deliberate indifference to . . . hiring . . . ." (FAC ¶ 66.) Moreover, Plaintiffs do not establish a "direct causal link" that is required of a *Monell* claim regarding a pattern of hiring. *See Brown*, 520 U.S. at 404 ("[P]laintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.") Instead, Plaintiffs make a conclusory allegation that "Plaintiffs' injuries and damages were a foreseeable result of this deliberate indifference to hiring . . . ." (FAC ¶ 67.)

As previously stated, deliberate indifference is a "stringent" standard of fault and without applying the standard rigorously, municipal liability may dissolve into respondeat superior or vicarious liability which is not permitted under § 1983. Based on the foregoing reasoning, Plaintiffs have failed to allege sufficient facts to support a *Monell* claim under a "deliberate indifference" theory.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' *Monell* claim based on a theory of deliberate indifference **WITH LEAVE TO AMEND**.

### 5. Plaintiffs' Claims Against the Unknown SDPD Officers

Defendants move to dismiss all of Plaintiffs' claims against Unknown SDPD Officers. (Doc. No. 13 at 2.) In Plaintiffs' Opposition to Defendants' motion to dismiss, Plaintiffs state they "do not oppose dismissal without prejudice of the Unknown SDPD Officer Defendants." (Doc. No. 15 at 11 n.1.)

Accordingly, Defendants' motion to dismiss Plaintiffs' claims against Unknown SDPD Officers is **GRANTED** and Plaintiffs' claims against Unknown SDPD Officers will be **DISMISSED WITHOUT PREJUDICE**.

### C. Motion to Strike

Defendants also move to strike several allegations from Plaintiffs' FAC on the basis they are impertinent and immaterial. (Doc. No. 13-1 at 11–12.) Plaintiffs oppose the

motion. (Doc. No. 15 at 17.)

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy*, 984 F.2d at 1527 (citation omitted) (internal quotations omitted). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Id.* (citation omitted) (internal quotations omitted).

### 1. Race-Based Statistics

Several of the allegations that Defendants wish to strike from the FAC contain race-based statistics. Defendants contend these allegations "are immaterial and impertinent" because they relate to claims not specifically alleged in the FAC—such as "searches, non-traffic stops, and field interviews, arrests, and uses of *lethal* force"—and thus should be stricken. (Doc. No. 13-1 at 12.) The Court disagrees.

"A motion to strike should only be granted [if] it is clear that [a matter] can have no possible bearing on the subject matter of the litigation." *Citizens for Quality Educ. San Diego v. San Diego Unified Sch. Dist.*, No. 17-CV-1054-BAS-JMA, 2018 WL 828099, at *2 (S.D. Cal. Feb. 12, 2018) (internal quotations omitted). Although the race-based statistics relate to constitutional violations not alleged in the FAC, the statistics are an attempt to illustrate a "settled practice or custom" of racial bias within the SDPD. Thus, because the allegations relate directly to Plaintiffs' *Monell* claim, the Court finds these allegations have a bearing on the subject matter of litigation.

Accordingly, Defendants' motion to strike paragraphs 34, 36, 38, 39, 40, 41, 47, and 48 is **DENIED**.

### 2. *Monell* Allegations

Defendants next move to strike Plaintiffs' *Monell* claims on the basis that they "allude[] to violations of the Fourth Amendment for which Plaintiffs do not allege facts to support any claim." (Doc. No. 13-1 at 13.) However, the Court has already granted the dismissal of these claims.

Therefore, Defendants' motion to strike Plaintiffs' *Monell* claims is **DENIED AS MOOT**.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion to dismiss and **DENIES** Defendants' motion to strike. Should Plaintiffs choose to file a Second Amended Complaint consistent with this order, they must do so **no later than August 26, 2022**.

**IT IS SO ORDERED.**

Dated: August 15, 2022

Hon. Anthony J. Battaglia
United States District Judge